UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEE VAN TOLLEFSON, | § | No. SA:14–CV–144–DAE |
| | § | (consolidated with) |
| Petitioner, | § | No. SA:14–CV–171–DAE |
| | § | |
| vs. | § | |
| | § | |
| WILLIAM STEPHENS, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE, | § | |
| CORRECTIONAL INSTITUTION | § | |
| UNIT, | § | |
| | § | |
| Respondent. | § | |

ORDER (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION AND (2) DENYING PETTIONER'S PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

Before the Court are Objections to the Magistrate Judge's August 21,

2014 Report and Recommendation (Dkt. # 21) and a Petition for Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 (Dkt. # 1) filed by Petitioner Lee Van

Tollefson ("Tollefson.")  Pursuant to Local Rule 7(h), the Court finds this matter

suitable for disposition without a hearing.  After careful consideration, and for the

reasons that follow, the Court **ADOPTS** the Magistrate Judge's Report and

Recommendation (Dkt. # 19) and **DENIES** Tollefson's Petition for Writ of Habeas

Corpus (Dkt. # 1).

<u>BACKGROUND</u>

I.    <u>Factual Background</u>

The Texas Fourth Court of Appeals summarized the facts in this case

as follows:

It is undisputed that Tollefson shot and killed Barbara [Coull].
Lee Tollefson was living in his travel trailer on David and Barbara
Coull's property.  The trailer was connected to the utilities and was
parked next to a vacant house.  On the day of the incident, Tollefson
testified he received a hysterical call from Barbara, accusing him of
stealing a battery charger.  After he hung up the phone, he fell asleep,
only to be awakened by Barbara, who was in his trailer.  Tollefson
testified Barbara was yelling and cursing at him so he told her to get
out of his house.  Tollefson testified Barbara told him she was going
to shoot him, and she left the trailer but started going through his
truck.  Tollefson further stated he knew he had a gun in his truck and
believed Barbara was going for the gun.  He claimed he leaned out the
trailer door and told Barbara to get out of his truck.  As she was
standing on the running board of his truck, Tollefson testified Barbara
pointed something shiny at him and said, "You are a dead son of a
bitch."  He testified this was when he grabbed a gun from his trailer
and held it up so Barbara could see it while telling her to "get the hell
out of here."  He further testified Barbara kept coming at him until she
raised her right hand and allegedly pointed something shiny at him.
Tollefson stated he then shot Barbara because he believed she was
going to shoot him.

After the shooting, Tollefson called the Wilson County
Sheriff's Office to tell them he had shot and killed Barbara.  After
placing the call, Tollefson took all of the firearms out of his trailer,
including the gun used to shoot Barbara and the gun from his truck,
laid them out on the patio outside the vacant house, and waited for the
officers to arrive.  When officers arrived, Tollefson was arrested.

After officers arrested Tollefson and took him to the Wilson
County jail, they searched his trailer without a warrant.  Officers
found Tollefson's personal papers, including a check to the Internal

Revenue Service, a document purporting to transfer his possessions to a friend in exchange for one dollar, a note documenting grievances against the Coulls, prescription pill bottles that were mostly empty, and a live .25 caliber round.

At trial, the medical examiner testified there was no way to determine where Tollefson was standing when he shot Barbara, but Crystina Vachon, a trace-evidence analyst, estimated the muzzle of the weapon was six to nine inches from Barbara's clothing when it was fired. Vachon also testified the shots could not have been fired from any farther away than three to three and a half feet.

Tollefson v. State, 352 S.W.3d 816, 818 (Tex. App.—San Antonio 2011, pet. ref'd).

II.    Procedural Background

Tollefson was found guilty of murder by a jury in the 218th Judicial District Court of Wilson County, Texas. (Dkt. # 2 at 6.) At the trial, Tollefson was represented by Brandon Hudson ("Hudson") and Douglas Daniel ("Daniel.") (Id.) On February 23, 2010, Tollefson was sentenced to a term of 50 years' imprisonment. (Id.) On August 31, 2011, the Texas Fourth Court of Appeals affirmed Tollefson's conviction in a published opinion. Tollefson v. State, 352 S.W.3d 816, 818 (Tex. App.—San Antonio 2011, pet. ref'd). On January 11, 2012, the Texas Court of Criminal Appeals refused Tollefson's petition for discretionary review. Tollefson v. State, No. PD–1514–11 (Tex. Crim. App. Jan. 11, 2012).

On February 7, 2013, Tollefson filed a pro se state habeas application under Article 11.07 of the Texas Code of Criminal Procedure.  (Dkt. # 2 at 6.) Tollefson subsequently hired Randy Schaffer ("Schaffer") to represent him in his habeas proceedings; Schaffer filed a supplemental petition in April of 2013 and an amended supplemental petition in May of 2013.  (Id. at 6–7.)  On January 15, 2014, the Texas Court of Criminal Appeals denied Tollefson's petition without written order based upon the findings of the trial court.  (Dkt. # 10 at 2–3.)

On February 18, 2014, Tollefson filed the federal habeas petition pursuant to 28 U.S.C. § 2254 that is now before this Court.  (Dkt. # 1.)  Tollefson alleges that he received ineffective assistance of counsel at the guilt/innocence phase of his trial when (1) counsel both made and failed to object to references to the deceased as the "victim," to the incident as a "murder" and a "crime," and to the scene of the incident as a "crime scene;" (2) counsel failed to object to testimony that the deceased did not have a criminal record; (3) counsel elicited testimony that Tollefson had a criminal record; and (4) counsel elicited testimony that Tollefson requested a lawyer after he was arrested and questioned by a deputy. (Dkt. # 1 at 5.)  The same day, Tollefson filed a brief in support of his petition. (Dkt. # 2.)  On May 9, 2015, Respondent William Stephens filed a response to Tollefson's petition, (Dkt. # 10), and on May 14, 2014, Tollefson filed a reply (Dkt. # 11).  On August 21, 2014, United States Magistrate Judge John W.

Primomo issued a Report and Recommendation recommending this Court deny Tollefson's petition.  (Dkt. # 19.)  On August 28, 2014, Tollefson filed objections to the Report and Recommendation.  (Dkt. # 21.)

<u>LEGAL STANDARD</u>

I.    <u>Review of a Magistrate Judge's Report and Recommendation</u>

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  <u>See</u> 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider.  <u>Thomas v. Arn</u>, 474 U.S. 140, 151 (1985).  A district court need not consider "[f]rivolous, conclusive, or general objections."  <u>Battle v. U.S. Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Report and Recommendation is clearly erroneous or contrary to law.  <u>United States v. Wilson</u>, 864 F.2d 1219, 1221 (5th Cir. 1989).

II.    <u>Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254</u>

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner may not obtain relief with respect to a claim adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).

A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  <u>Williams v. Taylor</u>, 529 U.S. 362, 405–06 (2000).  Relief is available only if the state court applied clearly established federal law unreasonably; a petitioner is not entitled to relief if the state court merely did so erroneously or incorrectly.  <u>Id.</u> at 144.  The only way a state prisoner may show that a state court unreasonably applied clearly established federal law is by showing that there was no reasonable basis for the state court's decision.  <u>Cullen v. Pinholster</u>, — U.S. —, 131 S. Ct. 1388, 1402 (2011).

A federal habeas court may overturn a state court's application of federal law only if it is so erroneous that "there is no possibility fairminded jurists

could disagree that the state court's decision conflicts with [Supreme Court] precedent." Nevada v. Jackson, — U.S. —, 133 S. Ct. 1990, 1992 (2013) (quoting Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786 (2011)).  Section 2254(d) imposes a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  Pinholster, 131 S. Ct. at 1398 (quoting Woodford v. Viscotti, 537 U.S. 19, 24 (2002)). Generally, a state court's factual findings must be presumed to be correct and can only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). Review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  Pinholster, 131 S. Ct. at 1398.

DISCUSSION

To obtain habeas relief on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his counsel was deficient and that the deficiency prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  In order to establish that his counsel's performance was constitutionally deficient, the petitioner carries the burden of proving that counsel's representation fell below an objective standard of reasonableness.  Id. at 688.  There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance.  Id. at 690.  In reviewing counsel's performance, the court makes every

7

effort to eliminate the distorting effects of hindsight, and attempts to adopt the perspective of counsel at the time of the representation.  Id. at 689.

Even if the petitioner is able to show that trial counsel's errors were professionally unreasonable, the petitioner must also be able to show that those errors were prejudicial to the defense in order to constitute ineffective assistance under the Constitution.  Id. at 692.  The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 694.  Only a reasonable probability is sufficient to undermine confidence in the proceeding's outcome.  Id.

Tollefson objects to the Magistrate Judge's Report and Recommendation on the following six grounds, each discussed in turn below.

## I.    Denial of an Evidentiary Hearing

Tollefson first objects to the Report and Recommendation on the grounds that the Magistrate Judge declined to conduct an evidentiary hearing. (Dkt. # 21 at 1–2).  Tollefson requested a hearing in order to question trial counsel under oath concerning their claims regarding trial strategy.  (Id.)  The Magistrate Judge denied Tollefson's request for a hearing in federal court because review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  (Dkt. # 19 at 6.)  Tollefson argues that even though a federal court need not conduct an evidentiary hearing, a hearing should

have been conducted in the interests of justice because it is virtually impossible for a federal habeas petitioner to rebut the presumption of correctness where he is denied the opportunity to challenge the assertions in trial counsels' affidavits on cross examination.  (Dkt. # 21 at 2.)

In Cullen v. Pinholster, the Supreme Court held that it is inappropriate for federal courts to conduct evidentiary hearings on § 2254(d) petitions because federal habeas review under that section "is limited to the record that was before the state court that adjudicated the claim on the merits."  131 S. Ct. at 1398–1400. It is true that AEDPA provides for evidentiary hearings in federal court under narrow circumstances:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  However, the Supreme Court explained that "[t]he focus of that section is . . . on limiting the discretion of federal district courts to hold

hearings." <u>Pinholster</u>, 131 S. Ct. at 1401 n.8 (emphasis added).  Section 2254(e)

applies to cases where habeas petitioners raise claims that were not "adjudicated on

the merits in State court"—in other words, claims to which § 2254(d) does not

apply.  <u>Id.</u> at 1401; <u>McCamey v. Epps</u>, 658 F.3d 491, 497 (5th Cir. 2011).  "The

high bar for introducing evidence in a § 2254(d) case accords with 'the basic

structure of federal habeas jurisdiction,' which acknowledges that 'state courts are

the principal forum for asserting constitutional challenges to state convictions.'"

<u>McCamey</u>, 685 F.3d at 497 (quoting <u>Harrington</u>, 131 S. Ct. at 787)).

   Under the Supreme Court's holding in <u>Pinholster</u>, the Magistrate

Judge was correct to deny Tollefson's request for an evidentiary hearing on his

§ 2254(d) petition.  <u>See id.</u> at 498 (relying on <u>Pinholster</u> in declining to consider

evidence developed at federal court evidentiary hearing where the petition

concerned only claims under § 2254(d)).  The Court therefore overrules

Tollefson's first objection.

II. <u>Opinion Testimony</u>

   Second, Tollefson objects to the Magistrate Judge's conclusion that

trial counsel's failure to object to the use of the words "victim," "crime," and

"crime scene;" their own use of those terms; and their failure to obtain a ruling on

their amended motion in limine regarding the use of the word "victim" did not

constitute ineffective assistance of counsel.  (Dkt. # 21 at 2–4.)  According to

Tollefson, Chief Deputy Johnie Deagen referred to Barbara Coull as a "victim" 48 times, to the incident as a "murder" and a "crime" twice, and the scene of the incident as a "crime scene" sixteen times without objection.  He further states that Sergeant Thomas Silva referred to Barbara as a "victim" twice without objection. Finally, he states that defense counsel referred to Barbara as the "victim" twice, to the incident as a "murder" once, and to the scene of the incident as a "crime scene" four times.  (Dkt. # 2 at 16–17.)  Tollefson asserts that all of these errors demonstrate that counsel performed deficiently and that if, as he argued at trial, he shot Barbara in self-defense, Barbara was not a "victim" of a "murder" and the location of the shooting was not a "crime scene."  (Id. at 2–3.)

In the Affidavit prepared at the state court's request, Hudson stated that in his experience as both a prosecutor and a criminal defense attorney in self-defense homicide cases, "[i]t was quite common for lay witnesses to refer to locations as crime scenes, deceased parties as victims and the investigation of the death of an individual as a murder investigation."  He further stated his belief that juries understand that "their role is to determine whether or not it was a self defense shooting or a murder," and that he chose not to object "for fear of drawing attention to the use of those words."  (Supp. Rec. 2d at 13, Dkt. # 15-19 at 18.)

In its findings of fact and conclusions of law, the state court found: "the use of each term was not excessive and did not draw unnecessary attention to

itself.  While an objection and instruction to disregard could have been obtained, defense counsels' decision that an objection might draw unnecessary scrutiny to the matter or alienate the jury is . . . an acceptable trial tactic."  (Supp. Rec. 2d at 45, Dkt. # 15-19 at 50.)

Tollefson argues that it is improper to refer to the complainant as a "victim" where there is a dispute as to whether a crime was committed.  (Dkt. # 2 at 17.)  In support of his position, he cites Talkington v. State, 682 S.W.2d 674 (Tex. App.—Eastland 1984, pet. ref'd).  In that case, the appellant had been convicted of rape in a jury trial.  682 S.W.2d at 674.  The trial court referred to the complainant as the "victim" in its charge to the jury.  Id. at 674–75.  The Texas Court of Appeals held that referring to the complainant as a "victim" when the sole issue was whether she had consented to the sexual intercourse was reversible error. Id. at 675.  Tollefson acknowledges the distinction between Talkington and this case—in Talkington, the court referred to the complainant as a victim, whereas here Tollefson complains about references made by witnesses and counsel—but nonetheless argues that such references are equally improper because they lack probative value and are unduly prejudicial.  (Dkt. # 2 at 17–18.)

In support of this position, Tollefson cites Ex parte Skelton, 434 S.W.3d 709 (Tex. App.—San Antonio 2014, pet. ref'd).  (Dkt. # 18.)  There, the State asked a law enforcement witness whether, in his opinion, the defendant "filed

a forged document."  434 S.W.3d at 726.  The court stated that the natural interpretation of this question is that the State asked the witness point-blank whether the defendant was guilty of forgery.  Id. at 726–27.  Because no witness is competent to voice an opinion as to guilt or innocence, the court found that defense counsel's failure to object supported the defendant's claim that counsel's performance fell below a reasonable standard.  Id. at 727.  In this case, however, Tollefson does not allege that any witness voiced a conclusive opinion as to his guilt, and the Court finds no such statement or inquiry in the record.  Thus, Skelton is distinguishable and inapplicable to the facts of this case.

Tollefson also cites State v. Wigg, 889 A.2d 233 (Vt. 2005) in support of his position that trial counsel performed deficiently by failing to object to the testimony.  (Dkt. # 2 at 18.)  In that case, the Vermont Supreme Court found that the probative value of a detective's reference to a complainant as a "victim" was outweighed by the danger of unfair prejudice; however, the Court also concluded that the error was harmless under the circumstances.  889 A.2d at 68–71.  The Court found that the detective's testimony indicated he was using a term he viewed as synonymous with complainant.  Id. at 70.  The Court therefore concluded "beyond a reasonable doubt that the jury would not have returned a different verdict had the detective used different and more neutral terminology."  Id.

Here, the state habeas court ultimately concluded that while errors may have occurred, the jury's verdict would not have been any different but for those instances.  (Supp. Rec. 2d at 47, Dkt. # 15-19 at 52.)  This Court agrees. Terms like "victim," "murder," "crime," and "crime scene" are frequently used in homicide trials, and in the greater context of the testimony in this case the Court finds that these terms carried no specific implication of guilt.  See Cueva v. State, 339 S.W.3d 839, 864 (Tex. App.—Corpus Christi 2011, no pet.) (holding that defense counsel's use of the word "victim" was not deficient "in light of the fact that such terms are commonly used at trial in a neutral manner to describe the events in question and, in context, carry no implication that the person using such terms has an opinion one way or the other about the guilt of the defendant.").  For these same reasons, trial counsels' failure to obtain a ruling on a motion in limine regarding the use of these terms does not constitute deficient performance.

Tollefson has not presented clear and convincing evidence to rebut the state court's findings.  The Court finds that the state court's conclusion is not contrary to or an unreasonable application of clearly established federal law, and the Court further finds that the state court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.  The Court therefore overrules Tollefson's second objection.

III.     Deceased's Lack of Criminal Record

Third, Tollefson objects to the Magistrate Judge's determination that trial counsel's failure to object to testimony that Barbara Coull had no criminal history did not constitute ineffective assistance of counsel.  (Dkt. # 21 at 4–5.) During re-direct examination of Deagen, the State asked whether Barbara had any criminal history; Deagen responded that she did not, and Tollefson's counsel did not object.  (3 R.R. at 177, Dkt. # 15-10 at 55.)

In his Affidavit, Daniel explained that a central part of their defense strategy was to portray Barbara as a "volatile, irrational, spiteful and unpredictable woman."  (Supp. Rec. 2d at 8, Dkt. # 15-19 at 13.)  This strategy involved putting Barbara's character at issue.  (Id.)  Daniel recognized that this testimony might have been objectionable at the time, but he and Hudson anticipated that it would become admissible during Tollefson's case in chief.  (Id.)  As Hudson stated in his Affidavit, "I believed it would be proper for the State to rebut our evidence that she was confrontational, hostile and aggressive with evidence that she had no previous arrests or convictions for any violent offenses or a criminal record."  (Supp. Rec. 2d at 15, Dkt. # 15-19 at 20.)  Hudson further stated that they did not object to the testimony because they "did not want to appear to be hiding evidence early in the trial which would be admissible at the State's request later in the trial."  (Id.)

Upon reviewing this evidence, the state court found:

> The applicant and his attorneys pursued a self defense trial strategy of showing Mrs. Coull, the deceased, to be irrational, out of control and volatile.  They believed this or similar evidence would become admissible during their case so they did not object.  Considering that an objection might tend to emphasize the point, the attorneys' decision not to object is considered by the court to fall within the realm of acceptable trial tactics and strategy.

(Supp. Rec. 2d at 45, Dkt. # 15-19 at 50.)

Tollefson argues that under Texas Rule of Evidence 404(a)(2), "evidence of a person's character or character trait is not admissible for the purpose of proving action and conformity therewith on a particular occasion except evidence of the peaceable character of the deceased offered by the prosecution in a homicide case to rebut evidence that she was the first aggressor."  Tex. R. Evid. 404(a)(2).  (Dkt. # 2 at 21.)  Tollefson states that Deagen's testimony was not offered to rebut testimony that Barbara was the aggressor, because Deagen was the trial's first witness.  (Id.)  As trial counsel noted in their Affidavits, the testimony regarding Barbara Coull's lack of criminal history may have been objectionable at the time it was first offered.  However, it would have likely become admissible after Tollefson's testimony that Barbara was the aggressor.  In light of the fact that this evidence likely would have later been properly heard by the jury, trial counsel's failure to object was sound trial strategy and did not constitute ineffective assistance.  As a general matter, courts are "highly deferential of

16

counsel's conduct and maintain a strong presumption that counsel's trial strategy fell within the wide range of reasonable professional assistance." Pape v. Thaler, 645 F.3d 281, 291 (5th Cir. 2011). The Fifth Circuit has "consistently found counsel's decisions regarding examination and presentation of witnesses and testimony to fall within this category of trial strategy which enjoys a strong presumption of effectiveness." Id.

Tollefson has not presented clear and convincing evidence to rebut the state court's findings. The Court finds that the state court's conclusion is not contrary to or an unreasonable application of clearly established federal law. The Court further finds that the state court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. The Court therefore overrules Tollefson's third objection.

IV.   Petitioner's Convictions

Fourth, Tollefson objects to the Magistrate Judge's conclusion that he was not denied effective assistance of counsel when trial counsel elicited testimony about Tollefson's criminal record. (Dkt. # 21 at 5–7.) At a bench conference outside the presence of the jury, the trial court granted Tollefson's motion in limine requesting a bench conference before eliciting any testimony about Tollefson's prior offenses or misconduct. (5 R.R. at 9, Dkt. # 15-13 at 9.) Daniel subsequently elicited testimony from Tollefson on direct examination that he was convicted of

17

assaulting his ex-wife in 1999, placed on probation and successfully completed it

in 2000; and that he was convicted of disorderly conduct and public indecency,

placed on probation in 2003, and successfully completed it in 2004.  (5 R.R. at 37–

38, Dkt. # 15-13 at 37–38.)

        In his Affidavit, Daniel stated that before the State closed its case in

chief, the trial judge held another bench conference regarding certain acts of

misconduct allegedly committed by Tollefson.  (Supp. Rec. 2d at 8, Dkt. # 15-19 at

13.)  At the conclusion of that conference, based on comments made by the trial

judge, Daniel and Hudson felt that evidence regarding Tollefson's prior

convictions would be admitted in the State's cross-examination.  (Id.)  They

therefore decided to ask Tollefson about those matters on direct examination "in an

effort to preclude the State from reaping any benefit as a result of it being able to

initiate such questioning."  (Id.)

        In its findings of fact and conclusions of law, the state court stated that

because his goal was to paint himself as the "sympathetic victim of an irrational,

volatile, shrewish woman," Tollefson wanted the jury "to consider him to be

completely transparent."  (Supp. Rec. 2d at 45, Dkt. # 15-19 at 50.)  The state court

concluded that counsel's "decision to be proactive and admit [the convictions]

rather than having the state bring it up on cross examination or rebuttal is an

acceptable and common trial tactic . . . . By bringing this evidence to the jury's

attention in this manner, the attorneys did the least damage to their case." (Supp. Rec. 2d at 46, Dkt. # 15-19 at 51.)  Finally, the court stated, "[w]hile the disorderly conduct conviction could have been excluded, its admission was not of such a nature that 'but for' its introduction the jury would have reached a contrary result." (Id.)

Tollefson argues that none of the convictions would have been admissible on cross-examination.  (Dkt. # 2 at 25; Dkt. # 21 at 6.)  Tollefson asserts that under Texas Rule of Evidence 609(a)[1], the State could not have properly impeached him with two successfully completed misdemeanor probations or a final misdemeanor conviction that did not involve moral turpitude.  (Dkt. # 2 at 24.)  However, whether or not the convictions were actually admissible is largely a moot point.  Contrary to Tollefson's assertion, the trial court did in fact indicate during the bench conference that it would permit testimony about the prior convictions.  The court informed Tollefson's counsel, "if it is there I'm going to let it in.  If it's not there I'm not going to let it in.  If [Tollefson] takes the stand he's subject to cross-examination depending on what doors are opened or not opened.

---

[1] Texas Rule of Evidence 609(a) provides:
> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

Tex. R. Evid. 609(a).

So that's just a decision you'll have to make."  Based on the representations made by the trial court, Tollefson's counsel had to proceed under the assumption that the convictions would be admitted, and they had to alter their trial strategy accordingly.

Tollefson, however, claims that "[n]o sound strategy could justify this conduct."  (Dkt. # 2 at 25; Dkt. # 21 at 6.)  Tollefson states that because his self-defense claim relied heavily on his own credibility, eliciting such testimony was unsound trial strategy.  (Dkt. # 2 at 24.)  In support of his position, Tollefson cites Greene v. State, 928 S.W.2d 119 (Tex. App.—San Antonio 1996, no pet.).  In that case, the Texas Court of Appeals found that Greene's counsel had "needlessly impeach[ed] its own witness" by asking her if she had gotten "in trouble" for writing bad checks.  928 S.W.2d at 122, 126.  The court found that this error, in conjunction with six others, undermined the court's confidence in the result of the trial.  Id. at 126.  However, the court also noted that each mistake standing alone did not constitute ineffective assistance of counsel.  Id.  The Court finds that Greene does not establish a blanket rule that asking a witness about prior convictions constitutes ineffective assistance of counsel.  As discussed above, trial counsel's decisions regarding trial strategy are entitled to great deference.  See Pape, 645 F.3d at 291.  Furthermore, even if eliciting testimony about the prior

20

convictions was error, Tollefson has not shown that there is a reasonable probability the outcome of the trial would have been different but for this error.

Again, Tollefson has not presented clear and convincing evidence to rebut the state court's findings.  The Court finds that the state court's conclusion is not contrary to or an unreasonable application of clearly established federal law, and the Court further finds that the state court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.  The Court therefore overrules Tollefson's fourth objection.

V.      Petitioner's Post-Arrest Request for Counsel

Fifth, Tollefson objects to the Magistrate Judge's conclusion that trial counsel did not perform deficiently when they elicited testimony that, after his arrest, Tollefson invoked his right to counsel.  (Dkt. # 21 at 7.)  During cross-examination of Sergeant Thomas Silva, a Wilson County patrol sergeant, Daniel elicited testimony that Tollefson indicated he wanted to speak with a lawyer at the scene of the incident.  (3 R.R. at 222, Dkt. # 15-10 at 100.)  Daniel then asked, "Now, normally wouldn't that be an indication that you are not to continue to question somebody?  When they tell you that they want to speak with a lawyer isn't that an indication to you that you don't have any business questioning that person?"  (Id.)  Daniel then elicited testimony that Silva had continued to question Tollefson after Tollefson indicated that he wanted to speak with a lawyer.  (3 R.R.

at 223, Dkt. # 15-10 at 101.)  Additionally, in response to questioning from Daniel

on direct examination, Tollefson confirmed that he repeated his request several

times post-arrest. [2]  (5 R.R. at 35–36, Dkt. # 15-13 at 35–36.)

_____

[2] The relevant portion of Daniel's direct examination of Tollefson is reproduced below:

Q.     Okay.  All right.  And without going into anything that was said, Lee, did you talk to the sheriff's people while you were in jail?

A.     Well, immediately as I got into the sheriff's car they wanted me to say— well, they asked me, well, what happened.  I said, I'd like to have a lawyer, please.

Q.     Okay.  All right.

A.     So and then that—he tried to get me to talk on the way back to town too.

Q.     Okay.

A.     But I just kept on telling him, you know, I want a lawyer.

Q.     Okay.  Now, when you—were you in jail for several days?

A.     Yeah.

Q.     Okay.  While you were in jail did you talk to the sheriff's—did you talk to the sheriff's department people?

A.     Well, I talked to the jailers and I kept on asking them—

Q.     Okay.  Don't talk about what you said.

A.     Okay.

Q.     All right.  Did you have the occasion to meet with Johnie Deagen and Gary Laughlin from the sheriff's department?

A.     Yes, sir, I did.

Q.     Okay.  And did you take the occasion to tell them what it was that happened out there on the property?

A.     Well, yes, I did, but—

Q.     Okay.  That's all I want to know.  You talked to them and you told them.  Who was it that initiated that meeting?  Did they come to you or did you ask to see them?

A.     I didn't ask to see them, but I was whining about a lawyer for—since the 20th.  And then they finally came to see me on the 26th.

Q.     Okay.

(5 R.R. at 35–36; Dkt. # 15-13 at 35–36.)

Both Daniel and Hudson address these pieces of testimony in their Affidavits.  Regarding Silva's testimony, Hudson stated that part of the defense was to "draw the attention of the jurors to the improper investigation techniques employed by the Wilson County Sheriff's Department.  (Supp. Rec. 2d at 15, Dkt. # 15-19 at 20.)  Daniel and Hudson also explained that after Tollefson requested an attorney, he voluntarily made a statement to officers which the State had decided not to offer into evidence.  (Supp. Rec. 2d at 10, Dkt. # 15-19 at 13; Supp. Rec. 2d at 15, Dkt. # 15-19 at 15.)  They believed that the statement was favorable to his defense, because making a statement without an attorney present supported Tollefson's defense that he had nothing to hide.  (Supp. Rec. 2d at 10, Dkt. # 15-19 at 13; Supp. Rec. 2d at 15, Dkt. # 15-19 at 15.)  Finally, Daniel stated that they discussed the goal of showing the jury that the State had not offered Tollefson's post-arrest statement into evidence; as part of that discussion, and in furtherance of that goal, he and Hudson advised Tollefson not to mention requesting a lawyer. (Supp. Rec. 2d at 10, Dkt. # 15-19 at 15.)

In its findings of fact and conclusions of law, the state court found:

> While the State could not have elicited this testimony, the fact that Defense counsel chose to do so is not prejudicial.  The testimony was elicited to show the investigation in the case was improper and that Applicant's rights were violated.  The court does not find the testimony prejudiced Applicant.  As to the testimony of the Applicant regarding his requests for counsel . . .  it appears that, in spite of his attorneys' instruction, he was determined to interject his repeated requests for counsel into the record . . . .  This court cannot find the

23

trial attorneys ineffective for pursuing a trial strategy dictated by their client.

(Supp. Rec. 2d at 46–47, Dkt. # 15-19 at 51–52.)

Tollefson argues that trial counsel performed deficiently by eliciting this testimony because evidence of a defendant's post-arrest silence violates his right against self-incrimination, and its prejudicial impact far outweighs its probative value. (Dkt. # 2 at 27.) He also asserts that Daniel never counseled him not to volunteer the fact that he had requested an attorney, and that Daniel's Affidavit does not address why he elicited the testimony from Silva. (Id.)

Tollefson first cites Doyle v. Ohio, 426 U.S. 610, 619 (1976) for the proposition that evidence of a defendant's post-arrest silence violates his right against self-incrimination. (Id.) It is true that using for impeachment purposes a defendant's silence at the time of arrest and after receiving Miranda warnings violates the Due Process Clause of the Fourteenth Amendment. Doyle, 426 U.S. at 619; Perez v. Stephens, 745 F.3d 174, 191 (5th Cir. 2014). In both Doyle and Perez, prosecutors asked the defendants on cross-examination why they had not presented their sides of the story at the time of arrest. Doyle, 426 U.S. at 614; Perez, 745 F.3d at 191. Here, Tollefson does not complain of conduct by the State, but rather argues that his own counsel were ineffective in allowing the jury to hear testimony that he asked for a lawyer after being arrested. Defense counsel is not prohibited from introducing such evidence, but because the same dangers apply—

24

i.e., the jury will believe that the "probable collateral implication of a defendant's invocation of [his] rights is that [he] is guilty"—courts must examine whether trial counsel "had a strategic basis for eliciting the testimony." Skelton, 434 S.W.3d at 719, 723–24.  Here, as the state court noted, trial counsel had a sound strategic basis for eliciting Silva's testimony: they wanted the jury to understand that the deputies had violated Tollefson's constitutional rights by continuing to question him after he invoked his right to counsel.

Tollefson also cites White v. Thaler, 610 F.3d 890 (5th Cir. 2010) in support of his position that Daniel performed deficiently in eliciting testimony that Tollefson invoked his right to counsel.  (Dkt. # 2 at 27.)  In that case, the habeas petitioner argued that his trial counsel should not have questioned him about his post-arrest silence on direct examination because it opened the door for the State to cross-examine him about his failure to explain his side of the story immediately after his arrest.  White, 610 F.3d at 899.  During closing arguments, the State argued that the petitioner should not be believed because he did not tell police his version of events.  Id.  In a later affidavit, defense counsel admitted questioning petitioner about his post-arrest silence was not party of any trial strategy.  Id. at 899–900.  The Fifth Circuit held that defense counsel performed deficiently by opening the door to the State's questioning.  Id. at 900.  Again, this case is distinguishable because Tollefson does not complain about the State's conduct at

trial.  He does not allege that Daniel's questioning about his post-arrest request for a lawyer resulted in any advantage to the State, or even that the State questioned him about his silence on cross-examination.  Tollefson does not explain how this testimony prejudiced him, and the Court agrees with the state court, which found that it did not.

Finally, Tollefson argues that trial counsel never instructed him to avoid mentioning his invocation of his right to counsel, and that Daniel's Affidavit does not explain why he questioned Silva about it.  (Dkt. # 2 at 27.)  Whether or not trial counsel instructed Tollefson not to mention his invocation of his right to counsel is neither here nor there.  As the state court noted, the transcript clearly shows that Tollefson was determined to tell the jury about his request, and Tollefson cannot argue that the testimony he himself insisted on offering constitutes ineffective assistance of counsel.  See Druery v. Thaler, 647 F.3d 535, 545 (5th Cir. 2011) (explaining that under the invited error doctrine, "a defendant cannot complain on appeal of alleged errors which he invited or induced, especially where [he] may not have been prejudiced by the error . . . . This doctrine applies to habeas review as well.") (quotations omitted).  Furthermore, Daniel's Affidavit very clearly explains why he questioned Silva about Tollefson's request for a lawyer—he wanted the jury to understand that Silva abused Tollefson's

constitutional rights by continuing to question him after he asked for an attorney. Tollefson cannot argue that this point was detrimental to his defense.

Tollefson has not presented clear and convincing evidence to rebut the state court's findings.  The Court finds that the state court's conclusion is not contrary to or an unreasonable application of clearly established federal law, and the Court further finds that the state court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.  The Court therefore overrules Tollefson's fifth objection.

## VI.    Prejudice

Lastly, Tollefson objects to the Magistrate Judge's conclusion that trial counsels' "minor errors" did not adversely affect the verdict in his trial.  (Dkt. # 21 at 8.)  Tollefson argues that the jury heard testimony that Barbara Coull was "verbally abusive, profane, confrontational, and a 'hard woman.'"  (Dkt. # 2 at 28–29.)  According to Tollefson, the jury had a plausible basis to acquit him on the basis of self-defense.  Tollefson further argues that due to the errors discussed in the preceding sections, the jury heard inadmissible, prejudicial testimony that destroyed his credibility and any realistic opportunity for acquittal.  (Id. at 29.)  He states that "[b]ut for counsels' errors in eliciting and failing to object to this testimony, there is a reasonable probability that the jury would have acquitted [him] or deadlocked."  (Id.)

Tollefson has the burden of demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different." Strickland, 466 U.S. at 694. "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." United States v. Wines, 691 F.3d 599, 604 (5th Cir. 2012) (citing Harrington, 131 S. Ct. at 787). In determining whether there was prejudice, a court looks at the totality of the evidence that was before the jury. Strickland, 466 U.S. at 695.

The state court concluded that after "[c]onsidering the entirety of the case, the performance of the attorneys . . . and the active participation of [Tollefson] in his trial, the trial court finds that [Tollefson] received a fair trial . . . . Where error may exist, the court does not find that 'but for' those instances, the jury's verdict would have been any different." (Supp. Rec. 2d at 47, Dkt. # 15-19 at 52.) This Court agrees. For the reasons stated above, trial counsels' performance did not fall below an objective standard of reasonableness. Furthermore, the record is replete with evidence supporting the jury's determination. Tollefson's cross-examination revealed that his relationship with Barbara Coull was under significant strain at the time of the incident. (5 R.R. at 40–45, Dkt. # 15-13 at 40–45.) Tollefson testified that he was afraid Barbara would locate the gun in his truck and shoot him, and initially chose to retreat into

his trailer, but then came back outside to confront her with his own weapon.  (5 R.R. at 26–30, Dkt. # 15-13 at 26–30.)

Tollefson also testified that he believed she was holding a gun when he shot her from five or six feet away.  (Id.)  However, as the Texas Court of Appeals noted in affirming his conviction, the forensic evidence established that he was only six to nine inches away from Barbara when he shot her.  Tollefson, 352 S.W.3d at 823; (4 R.R. at 177; Dkt. # 15-12 at 38.)  Tollefson testified that Barbara was facing him when he fired and that he only shot her once, (5 R.R. at 81, Dkt. # 15-13 at 81), but the autopsy showed that she was shot three times—once under the right ear and twice in the back of her head from behind.  (3 R.R. at 190–94, Dkt. # 15-10 at 68–72.)  Based on this evidence, it is apparent that the jury rejected Tollefson's theory of self-defense: the evidence showed that Tollefson sought confrontation with Barbara before the shooting, and shot her three times in the side and back of the head at a distance of only six to nine inches.  Tollefson has not presented sufficient evidence to indicate to this Court that the result of his trial would have been different but for trial counsels' errors.

CONCLUSION

For the reasons stated above, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. # 19) and **DENIES**

Tollefson's Petition for Writ of Habeas Corpus (Dkt. # 1).  The Court **DENIES** a

certificate of appealability in this case.

       **IT IS SO ORDERED.**

       **DATED:** San Antonio, Texas, December 23, 2014.

_____

David Alan Ezra
Senior United States Distict Judge